FILED
2015 Feb-10  AM 10:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | | |
|---|---|---|
| **VALECIA R. WILLIAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 12-cv-4120-VEH** |
| | ) | |
| **NEA FOOD SERVICES, LLC,** | ) | |
| **JOEL MARLER, CEO** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## MEMORANDUM OPINION

This employment discrimination action was filed on December 19, 2012, by the plaintiff, Valecia R. Williams, against the defendants, NEA Food Services, LLC ("NEA") and Joel Marler. Although the complaint contains three counts, the exact statutory basis for any of the counts is unclear. For one thing, in the "Jurisdiction" section of the complaint, the following language appears:

> This is a suit for relief from race discrimination instituted pursuant to <u>Title VII of the Civil Rights Acts of 1964</u>, as amended, 42 U.S.C. Section 2000e *et. seq.* and <u>42 U.S.C. Section 1983</u>. The jurisdiction of this Court is based on 42 U.S.C. Section 1981.

(Doc. 1 at 1) (emphasis added). Thereafter, the plaintiff sets out three counts, none of

which discuss either Title VII or Section 1983.[1]

Count One of the complaint alleges that the plaintiff was subjected to "adverse job actions because of her race," and that the defendants' stated reasons for their conduct were a "pretext for race discrimination." (Doc. 1 at 4). No statutory or other basis for relief under this count appears until its request for relief which, among other things, seeks a declaration that the defendants' alleged conduct was "in violation of the Civil Rights Act of 1866 (as amended by the Civil Rights Act of 1991) hereinafter cited as 42 U.S.C. § 1981; and all other applicable federal laws." (Doc. 1 at 6). The only other statutory relief requested in the count is for "attorney's fees and costs . . . in accordance with 42 U.S.C. Section 1988; and all other applicable federal laws." (Doc. 1 at 6).

Count Two alleges "[t]he [d]efendants retaliated against [p]laintiff for engaging in protected activity." (Doc. 1 at 7, ¶ 16). That count alleges that the plaintiff "engaged in activity protected by 42 U.S.C. Section 1981." (Doc. 1 at 6). Then, like Count One, the count seeks a declaratory judgment under Section 1981, and "all other applicable federal laws" (doc. 1 at 8), and "attorney's fees and costs . . . in accordance with 42 U.S.C. Section 1988; and all other applicable federal laws." (Doc. 1 at 8).     Count

---

[1] As will be discussed, this is only the first of <u>many</u> problems with the plaintiff's submissions in this case.

Three alleges that

> [d]efendant failed to adequately train [d]efendants Calvert and Marler /
> or failed to take corrective actions to prevent [d]efendants Calvert and
> Marler from engaging in racial discriminatory practices in the workplace
> against the [p]laintiff and/or failed to prevent [d]efendants Calvert
> Marler [sic] from engaging in retaliatory actions against the [p]laintiff.

(Doc. 1 at 9, ¶ 24). Although this count seems to be solely a solely state-law

negligence based claim, the count seeks the same declaratory relief and attorneys fees

under Section 1981, 1988, "and all other applicable federal laws" (doc. 1 at 10) as is

sought in the first two counts.

Counts One and Two are brought against both defendants.[2] Count Three

appears to be brought only against NEA.

The case comes before the court on the motion for summary judgment filed by

the defendants. (Doc. 26). For the reasons stated herein, the motion will be

**GRANTED**, and this case will be **DISMISSED with prejudice**.

## I.    STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper if there

is no genuine dispute as to any material fact and the moving party is entitled to

judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*,

---

[2] As will be shown below, the plaintiff seems to think that she has sued three defendants.
In reality, she has sued only two.

477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.") (internal quotation marks and citation omitted). The party requesting summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings in answering the movant. *Id.* at 324. By its own affidavits – or by the depositions, answers to interrogatories, and admissions on file – it must designate specific facts showing that there is a genuine issue for trial. *Id.*

The underlying substantive law identifies which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman*, 229 F.3d at 1023. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Id.* If the evidence presented by the non-movant to rebut the moving party's evidence is merely colorable, or is not significantly probative, summary judgment may still be granted. *Id.* at 249.

How the movant may satisfy its initial evidentiary burden depends on whether that party bears the burden of proof on the given legal issues at trial. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). If the movant bears the burden of proof on the given issue or issues at trial, then it can only meet its burden on summary judgment by presenting *affirmative* evidence showing the absence of a genuine issue of material fact – that is, facts that would entitle it to a directed verdict if not controverted at trial. *Id.* (citation omitted). Once the moving party makes such an affirmative showing, the burden shifts to the non-moving party to produce "significant, probative *evidence* demonstrating the existence of a triable issue of fact." *Id.* (citation omitted) (emphasis added).

For issues on which the movant does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. *Id.* at 1115-16. First, the movant may simply show that there is an absence of evidence to support the non-movant's case on the particular issue at hand. *Id.* at 1116. In such an instance, the non-movant must rebut by either (1) showing that the record in fact contains supporting evidence sufficient to withstand a directed verdict motion, or (2) proffering

5

evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Id.* at 1116-17. When responding, the non-movant may no longer rest on mere allegations; instead, it must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358 (1996). The second method a movant in this position may use to discharge its burden is to provide affirmative *evidence* demonstrating that the non-moving party will be unable to prove its case at trial. *Fitzpatrick*, 2 F.3d at 1116. When this occurs, the non-movant must rebut by offering *evidence* sufficient to withstand a directed verdict at trial on the material fact sought to be negated. *Id.*

## II.   FACTS

### A.   <u>Facts Proffered by the Defendants and Deemed Admitted</u>

Regarding any response brief filed in response to a motion for summary judgment, the court's summary judgment scheduling order, issued in this case on December 19, 2012, provides that:

> Each party opposing a summary judgment motion also must submit a statement of facts divided as follows.
>
> . . .
>
> The first section must consist of only the non-moving party's disputes, if any, with the moving party's claimed undisputed facts. The non-moving party's response to the moving party's claimed undisputed facts shall be in *separately numbered paragraphs* that coincide with those of the moving party's claimed undisputed facts. Any statements of

fact that are disputed by the non-moving party must be followed by a specific reference to those portions of the evidentiary record upon which the dispute is based. *All material facts set forth in the statement required of the moving party will be deemed to be admitted for summary judgment purposes unless controverted by the response of the party opposing summary judgment.*

(Doc. 3 at 17) (italics in original).

The following facts were proffered by the defendants, and are deemed to be admitted since they were not addressed, and therefore not disputed by the plaintiff:

A.    NEA

1.    NEA provides food service to the National Guard, as a subcontractor to the State of Alabama.

2.    Defendant Joel Marler is blind.

3.    Kerri Calvert ("Calvert"), NEA Human Resources Manager, has more than 30 years of food service experience.

4.    Calvert has been a leader or manager for more than twenty years.

5.    Calvert keeps Marler apprised of all discipline and management issues.

6.    Marler has the power to terminate employees.

7.    NEA has a policy of nondiscrimination and nonretaliation.

8.    From 2010 to 2012, NEA had six (6) African-American and one (1) white food service manager[].

B.    Plaintiff's Personal and Employment History

9.    Plaintiff is African-American.

7

10.     Plaintiff worked as a hostess, cleaner, and cook at fast food restaurants early in her career.

11.     Plaintiff worked at Tysons processing chicken from 1987 to 1994 on and off.

12.     Prior to [being hired] at NEA, [p]laintiff had been on federal disability for about 10 years.

13.     Plaintiff did not work during the ten-year period of her federal disability.

14.     NEA was the only place [p]laintiff applied after disability.

15.     Plaintiff had a criminal complaint [filed] against her in 1987 for fighting, including hitting and raising her voice.

16.     In 2011, while she was employed at NEA, [p]laintiff was arrested for domestic violence.

17.     Plaintiff pled guilty and attended an anger management course in a deal with the prosecutor.

18.     The anger management course is a psycho-educational program to help both men and women stop their abusive behavior and emphasizes the importance of learning more constructive strategies for resolving conflict and managing anger.

C.      Plaintiff's Hire and Promotion at NEA

19.     Plaintiff was hired by NEA and Marler as a cook in January 2005.

20.     Marler hired [p]laintiff the day after her interview with him.

21.     Plaintiff was trained by Melladine Elston ("Elston").

22.     Within two weeks of her request to be considered, [p]laintiff went into training to be a food service manager.

23.     Elston trained [p]laintiff to be a manager in 2007.

24.     A senior food service manager has more experience than a food service manager and her job is to help correct and direct food service managers.

25.     Assistant Project Manager Elston supervised [p]laintiff.

26.     Elston is African-American.

27.     The food service manager position description requires "the ability to handle personnel efficiently in a respectful business manner." [(Doc. 25-4 at 16)].

28.     A food service manager also must have "the ability to discretely handle problematic situations and to find solutions that are in compliance with all rules and regulations." *Id.*

29.     NEA had manager meetings three or four times out of the year.

30.     At one meeting, Marler said "that no one was going to disrespect one another. Everybody should be treated equal. He was not going to have it." [(Doc. 25-6 at 33(128)) (Williams deposition)][3].

31.     NEA policy requires [that every employee] respect every other employee.

32.     Disrespect is anywhere from being rude to creating a scene before the other employees or the customer soldiers.

33.     Plaintiff   received   the   employment   handbook   during   her

---

[3] The movant cites to a travel transcript. The court has altered this fact to indicate the portion of the record cited by the movant. The citation the court uses refers first to the court document number ("doc. 25-6"), then to the page of that document on which the travel transcript page appears ("at 33"), then to the specific page of the deposition cited on that travel transcript page ("(128)").

employment.

34.    Plaintiff knew that if she violated a policy, she could be terminated.

35.    Plaintiff received the NEA harassment policy on or about March 19, 2010.

36.    Plaintiff was aware of NEA's policy against harassment.

37.    Plaintiff attended a meeting about NEA's anti[-]harassment policy, called by Human Resources Manager Kerri Calvert.

38.    At the meeting, they talked about the policy and watched a film.

39.    Plaintiff was aware that harassment was prohibited at NEA.

40.    Plaintiff understood that harassing behavior would . . . possibly [result] in termination.

41.    Plaintiff understood that if people used language that was not respectful, it could result in termination.

D.    Plaintiff's Warnings and Discipline

42.    Plaintiff was warned on many occasions not to use a disrespectful tone.[4]

---

[4] While the court has omitted most citations, the court adds this note in order to set out the instances cited in this fact. *See* doc. 25-5 at 4 ("HR Notation" dated 2/26/08 for refusing to sign write up slip after being written up for "attitude") doc. 25-5 at 5 ("Employee Probationary Period" dated 2/25/08 for "Attitude Towards Fellow Associates," "disrespectful in tone" towards a Senior Manager); doc. 25-5 at 10 ("disciplinary" record of verbal warning dated 1/20/12 to "watch tone taken with employees and subordinates; condescending and insubordinate; another infraction will result in termination."); doc. 25-5 at 11 (Calvert note of verbal warning given on 1/20/12, "to change tone--stop the attitude please . . . cease and desist warning); doc. 25-5 at 12 (Calvert note of verbal warning dated 9/24/07, to "stop making crude comments towards Branda O'hammer . . . have a positive attitude and to be respectful towards her co-workers."); doc. 25-5 at 13 (Calvert note of verbal warning dated 11/16/07, re: "the way she talks to Ms. Brenda . . .

43.    Plaintiff's pay did not change when she received warnings.

44.    Plaintiff was not demoted after receiving warnings.

45.    Plaintiff received raises like everyone else.

E.    Plaintiff Never Complained About Race Discrimination

46.    Plaintiff never complained about race discrimination.

47.    Plaintiff complained that she did not receive a Christmas gift because she was on leave at the time (December 2011).

48.    Although [p]laintiff calls it a "bonus," it was not based on productivity or performance.

---

Loose [sic] the attitude. Treat her the way you want to be treated. Be respectful. Change tone."); doc. 25-5 at 14 (Calvert note of verbal warning dated 6/20/11, re: "yelling at employees . . . change tone . . . calm down . . . if happens again will be subject to termination"); doc. 25-5 at 15 (Calvert note of verbal warning dated 3/3/10 re: "confrontational . . . attitude . . . disrespectful . . . calm down . . . stop raising voice . . . change attitude"); doc. 25-5 at 16 (Calvert note of verbal warning dated 08/01/08 re: "attitude when trying to constructively correct adjustments to recipe cards"); doc. 25-5 at 17 (Calvert note of verbal warning dated 06/04/08 re: "constant attitude during correction"); doc. 25-5 at 18 (Calvert note of verbal warning dated 01/12/11 re: "yelling at employees . . . and 'snapping on' soldiers," "asked to immediately guard her words . . . and instructed could lose position as a [manager] if happens again"); doc. 25-5 at 19 (Calvert note of verbal warning dated 03/06/10 re: "outburst . . . jumping up in [co-employee's] face yelling . . . anything like this again will be cause to be subject to termination"); doc. 25-5 at 20 (Calvert note of verbal warning dated 08/19/11, re: "called with attitude on phone alleging her hours weren't correct on her check . . . asked to loose [sic] attitude and I would pull her hours"); doc. 25-5 at 21 (Calvert note of verbal warning (date unclear) re: "attitudes . . . soldier complaint, yelling at employees"); doc. 25-5 at 4, ¶14 (Affidavit of Melladine Elston) ("[O]n or about January 20, 2012, I gave Renee Williams a verbal warning to watch her condescending tone with employees and subordinates and told her that another infraction will result in termination."); doc. 25-7 at 20(73-74) (Williams deposition) (acknowledging two occasions where she was asked to calm down); doc. 25-2 at 9 (29-30) (Marler deposition) ("She was called into the office multiple times to get her to tone her voice down, to quit yelling at people, and that she had to stop it."); doc. 25-2 at 20 (74) (Marler deposition) ("I cautioned her about [raising her voice and talking down to people] more than once verbally."); doc. 25-2 at 25(93) (Marler deposition) ("There's been occasions where I stepped out the door and asked [the plaintiff] to tone it down.").

49.     No managers ever received a Christmas gift while on leave.

50.     All other food service managers, including five African-American managers, received Christmas gifts that year.

F.     Plaintiff's Termination

51.     On Monday, April 23, 2012, after [p]laintiff's prior weekend shifts, Elston received complaints from multiple employees about [p]laintiff's actions and statements.

52.     Elston asked the complaining employees to sit separately and write their statements of what happened.

53.     The following five (5) employees submitted statements: David Anderson, Mary Brown, Kameshia Davis, Pam Moore, and Gerri Glass.

54.     All of these employees are African American.

55.     David Anderson stated: "On Sunday morning 4-22-2012, I was sitting at [the] table … having a conversation with Mrs. Gerri, Shan, and Kamesha. [Plaintiff] came in and told me to shut the fuck up! This is not the first time she has said this to me." [(Doc. 25-4 at 5)].[5]

56.     Gerri Glass stated: "David, Kameshia and I were in the din[]ing room and [Plaintiff] walked in as David was asking me a question, out of nowhere she told him to shut the F! up. I asked [plaintiff] not to talk to him [to him] that way, David didn't respond." [(Doc. 25-4 at 8)].

57.     Kameshia Davis stated: "We (David and I) was sitting at the table and David was talking to Gerri about something and [plaintiff] was getting coffee and said David F-U or F-U David it was said one of those ways and he said nothing after that was said." [(Doc. 25-4 at 6)].

---

[5] There has been no challenge to the admissibility of these written statements.

58.    Mary Brown stated: "We came up here to 1211 to help with sacks [sic] lunch. When [plaintiff] came in the door, she said all of you, mother f…kers going to help with the sacks lunches." [(Doc. 25-4 at 6)] (emphasis in original).

59.    Pam Moore stated: "I was cut[ting] up tomato & lettuce & onion for the Taco salad & heard [plaintiff] say that she has to make sack lunc[h] all you M.F. are gone [sic] to make too." [(Doc. 25-4 at 7)].

60.    After the statements were collected, Calvert read the statements to Marler for his consideration. The statements were communicated to Marler in this manner because Marler is blind.

61.    When Marler spoke to [p]laintiff, she stated that everyone cursed.

62.    No other manager had cursed at other employees to the knowledge of NEA.

63.    Plaintiff was separated from NEA on April 26, 2012.

64.    In her deposition, [p]laintiff stated that she sometimes had to ask employees to help with sack lunches.

65.    Plaintiff testified that the reason Marler gave her for her termination was that Marler did not tolerate attitudes and she cursed in the kitchen.

G. No Evidence of Race Discrimination

66.    No one at NEA made racial comments, slurs, or referred to race at all.

67.    Plaintiff [testified at her deposition that she] "didn't have a problem with Mr. Joel [Marler] at all." [(Doc. 25-7 at 29(110))].

68.    Plaintiff claims she does not know why she was fired. [(Doc. 25-7 at 6(19))].

69.    Plaintiff did not know if it was race, sex, or something else. [(Doc. 25-7 at 21(80)-22(81))].

70.    Plaintiff just thought it was unfair. *Id.*

71.    After [p]laintiff left NEA, existing African-American managers and managers-in-training performed her usual duties.

72.    When managers wrote employees up or employees had complaints, NEA investigated and talked to each party separately.

73.    NEA management had no knowledge of an NEA manager, other than [p]laintiff, cursing at other employees.

74.    NEA management had not received any complaints that managers other than [p]laintiff cursed at other employees.

75.    David never made a complaint that anyone other than [p]laintiff had been disrespectful to him.

76.    Prior to [p]laintiff's termination, NEA terminated a white inventory manager after receiving written complaints about her inappropriate remarks and tone.

77.    Prior to [p]laintiff's termination, Marler gave a white manager-in-training a verbal warning for her inappropriate tone.

78.    The only white food service manager at the time of [p]laintiff's termination worked on a different shift than [p]laintiff.

(Doc. 26 at 7-15).

### B.    The Plaintiff's Narrative Statement of Facts Is STRICKEN

Regarding the statement of facts contained in the non-movant's brief, the court's summary judgment scheduling order provides:

14

The second section may contain additional, allegedly undisputed facts set out in separately numbered paragraphs that the opposing party contends require the denial of summary judgment. The second section of the opposing party's statement of facts, if any, shall be clearly designated as such. The opposing party should include only facts which the opposing party contends are true and not in genuine dispute.

. . .

The third section may contain additional, allegedly disputed facts set out in separately numbered paragraphs that the opposing party contends require the denial of summary judgment. The third section of the opposing party's statement of facts, if any, shall be clearly designated as such. Each statement of allegedly disputed facts must be followed by specific reference to those portions of the evidentiary record which both support and contradict the alleged fact.

(Doc. 3 at 17-18). In a footnote the court also noted:

Each statement of fact should be supported by its own evidentiary citation, regardless of the fact that more than one statement of fact allegedly is supported by the same specific reference to the evidentiary record or more than one statement of fact is contained in the same numbered paragraph.

(Doc. 3 at 18, n. 4).

Instead of complying with these requirements, the plaintiff has submitted a narrative statement of facts, not in separately numbered paragraphs. (Doc. 29 at 1-5). Many facts appear in sentences not followed by a citation to the record. Further, several of these sentences are not <u>facts</u> at all, but on their face are merely "averments." (*See* doc. 29 at 2 ("[p]laintiff avers that she was singled out . . . "); doc. 29 at 2 ("[p]laintiff avers that after she complained . . ."); doc. 29 at 3 ("[p]laintiff avers that

15

she received unfair treatment . . ."); doc. 29 at 3 ("[p]laintiff avers that a white manager . . ."); doc. 29 at 4 ("[p]laintiff avers that she was not given seniority . . ."); doc. 29 at 4 ("[p]laintiff avers that when Kelli Shultz . . ."); doc. 29 at 4 ("[p]laintiff avers that the NEA policy . . ."); doc. 29 at 4 ("[p]laintiff avers that her work environment . . ."); doc. 29 at 4-5 ("[p]laintiff avers that after she wrote Pam Moore . . .")).

Regarding the requirements for motions and responses to summary judgment, the court's uniform initial order is clear that **"[e]xcept for good cause shown, briefs and evidentiary materials that do not conform to the following requirements may be stricken."** (Doc. 3 at 14) (emphasis in original). That order also provided that **"[t]he court reserves the right sua sponte to STRIKE any statements of fact or responsive statements that fail to comply with these requirements."** (Doc. 3 at 19) (emphasis in original). Because the plaintiff failed to comply with this court's requirements, her statement of facts is **STRICKEN**. No portion of the narrative statement of facts provided by the plaintiff will be considered by the court, or included in this court's opinion.

## III.   ANALYSIS

### A.   <u>The Only Defendants in This Case Are NEA and Marler</u>

Count Three of the Complaint refers to "[d]efendants [Kerri Webb] Calvert and

Marler." (Doc. 1 at 9). As noted in the introduction to this opinion, the only defendants in this case are NEA and Marler. Calvert is not listed in the court's CMECF system as a defendant in this case. Calvert <u>is</u> named in the complaint, under the section entitled "Parties," in the same paragraph with the other defendants. But she is not expressly identified <u>as a defendant</u> there. Further, the complaint fails to list Calvert's name in its title. *See*, FED. R. CIV. P. 10(a) ("The title of the complaint must name all the parties."). Accordingly, the clerk of court has docketed only NEA and Marler as defendants. Too, the record does not reflect service of process on Calvert. No Answer has been filed by Calvert. Neither Calvert, nor counsel on her behalf, participated in the Rule 26 meeting of the parties. (Doc. 12 at 1).

Whether Calvert is in fact a defendant is an issue that was not raised by the parties. However, in the interest of closure and finality, the court feels the need to address it now. Because Calvert was not named in the title of the complaint, because the parties have acted as if Calvert was not a party to this case, and because no service of process was perfected on Calvert over the two years since this case was filed, the court deems Calvert to have never been a party to this action.

Regardless, if Calvert somehow is later determined to be, or to have been, a party, the failure to serve Calvert after all this time is grounds for her dismissal. The plaintiff was advised of this possibility on December 19, 2012, in the court's Uniform

Initial Order. (*See* doc. 3 at 5). Accordingly, in the event that Calvert somehow <u>is</u> deemed to be, or to have ever been, a party to this case, the court wishes to make clear that she is now **DISMISSED without prejudice** for lack of service.

### B.    The Complaint Contains No Claims under 42 U.S.C. § 1983 or Title VII for Race or Gender Discrimination

As noted above, except for one sentence under the "Jurisdiction" section of the complaint, there is no mention of Title VII or Section 1983 in the complaint. Although the plaintiff argues both causes of action in her response to the motion for summary judgment, "[i]n this circuit, a plaintiff cannot amend his complaint through argument made in his brief in opposition to the defendant's motion for summary judgment." *Miccosukee Tribe of Indians of Florida v. United States*, 716 F.3d 535, 559 (11th Cir. 2013). Regardless, even assuming that the vague reference to these statutes somehow was sufficient to set out a claim for relief thereunder, the claims fail for the reasons set out below.

Further, the complaint is clear that "[t]his is a suit for relief from <u>race</u> discrimination" (doc. 1 at 1) (emphasis added), and all counts of the complaint refer only to race discrimination or retaliation based upon complaints of race discrimination. Further, the complaint mentions only a "race discrimination charge"

which was filed with the EEOC. (Doc. 1 at 1).[6] Strangely, the plaintiff still devotes six pages of her brief to demonstrating that "the plaintiff has made a claim for <u>gender</u> discrimination under Title VII." (Doc. 29 at 5-10) (emphasis added) (capitalization omitted). Again, since the plaintiff cannot amend her complaint through argument in her brief, these arguments are without merit.[7]

### C.      The Plaintiff's Race Discrimination Claim Fails

Regardless as to whether Count One is read to allege race discrimination in violation of Title VII or 42 U.S.C. § 1981, the analysis is the same. *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). As stated by the Eleventh Circuit:

> Where, as in this case, a plaintiff relies on circumstantial evidence to prove discrimination, we apply the familiar burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973). *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir.2010). Under that framework, the plaintiff must first establish a prima case of discrimination. *Id.* If the plaintiff meets her burden, the employer can rebut the resulting presumption of discrimination by articulating a legitimate non-discriminatory reason for its challenged employment action. *Id.* Plaintiff then has an opportunity

---

[6] The charge itself appears in the record at document 25-11 page 5. In the charge, the boxes for "race" and "sex" discrimination are checked.  (Doc. 25-11 at 5). Further, in her charge the plaintiff states that she believes that "she was discriminated against because of [her] race, Black and sex, female in violation of Title VII." (Doc. 25-11 at 5). However, the sex discrimination claims are not included in the complaint.

[7] Even if there <u>were</u> a gender discrimination claim in the complaint, the plaintiff's argument, which is mostly six pages of legal citations strung together, seemingly randomly, is unpersuasive, to say the least.

to produce evidence that the proffered reason is a pretext for discrimination. *Id*.

> . . . The available methods of establishing a prima facie case "are flexible and depend on the particular situation." Id. As relevant to this case, [p]laintiff can meet her burden with evidence that (1) she is a member of a protected class, (2) she was qualified for the position that she held, (3) she was terminated from that position, and (4) in terminating her employment, [d]efendants treated [p]laintiff less favorably than a similarly situated employee outside of her protected class. *Smith v. Lockheed–Martin Corp.*, 644 F.3d 1321, 1325 (11th Cir.2011).

*Carter v. Columbia Cnty.*, No. 14-11963, 2014 WL 7388797, at *2-3 (11th Cir. Dec. 30, 2014).[8]

The defendants argue that the plaintiff cannot establish a prima facie case of discrimination. The plaintiff makes no argument in her brief that she was subject to race discrimination.[9] Accordingly, she has not satisfied her prima facie case and her

---

[8] The defendants argue the same elements cited in *Carter*, except the fourth. The defendants contend that the fourth element should be that "she was replaced by a person outside the protected class." (Doc. 26 at 17 (citing *Coutu v. Martin County Bd. of County Comm'rs*, 47 F.3d 1068, 1073 (11th Cir. 1995)). As will be shown, because the plaintiff makes no attempt to satisfy any elements of any version of the prima facie case of discrimination, the difference between the court's and the defendant's elements does not matter.

[9] In the section of her brief discussing "retaliation," the plaintiff briefly mentions "harassment." (doc. 29 at 13), and "an abusive working environment" (doc. 29 at 14). These arguments are more appropriate to a hostile work environment claim–something not present in the complaint in this case. Even if such a claim were present in this case, the plaintiff's underdeveloped argument would not suffice. Further, because the EEOC charge filed in this case did not contain a hostile work environment claim (*see* doc. 25-11 at 5), the plaintiff has failed to satisfy her Title VII administrative prerequisites regarding any such claim. *Green v. Elixir Indus., Inc.*, 152 F. App'x 838, 840 (11th Cir. 2005).

race discrimination claim fails.

Even assuming that the plaintiff established a prima facie case of discrimination, the defendants have presented a legitimate non-discriminatory reason for her discharge. Company policy did not allow for disrespectful treatment. The evidence is overwhelming that the plaintiff had been warned many times to watch her tone and treat fellow employees with respect and refused to do so. (Doc. 26 at 19). Finally, after all of the warnings in the record, several employees lodged formal complaints against the plaintiff for this same conduct. Upon investigation, the plaintiff did not deny that the conduct occurred. The plaintiff has made no showing of pretext regarding this evidence.

### D.    The Plaintiff's Retaliation Claim Fails

As noted by the Eleventh Circuit:

> A retaliation claim based on circumstantial evidence is analyzed according to the *McDonnell Douglas* framework. *See Goldsmith v. City of Atmore*, 996 F.2d 1155, 1162–63 (11th Cir.1993). Accordingly, if the plaintiff makes out a prima facie case, and the employer proffers a legitimate, nondiscriminatory reason for taking the materially adverse action, the plaintiff must show that proffered reason is pretextual. *See Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir.2009). A plaintiff may establish a prima facie case of retaliation by presenting evidence showing that (1) he engaged in statutorily protected conduct, (2) the employer took action that would have been materially adverse to a reasonable employee, and (3) there is a causal connection between the protected conduct and the adverse employment action. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir.2001); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57, 126 S.Ct. 2405, 2409, 165

L.Ed.2d 345 (2006).

*Walker v. Sec'y, U.S. Dep't of Air Force*, 518 F. App'x 626, 627-28 (11th Cir. 2013).[10]

The defendants argue that the plaintiff cannot demonstrate that she engaged in statutorily protected conduct. (Doc. 26 at 24-25; doc. 30 at 6). In the plaintiff's brief, she acknowledges her duty to "show that she was engaged in protected opposition to . . . discrimination" (doc. 29 at 11), but provides no evidence that she did so. She states only that her "authority was continually undermined by [d]efendant Kerri Calvert's actions to question and refusal to support [p]laintiff's authority while supporting white supervisor Kelli Schultz." (Doc. 29 at 12). This lone statement identifies no protected activity. The plaintiff's retaliation claim fails.[11]

### E.    **Count Three**

Count Three alleges that

[d]efendant failed to adequately train [d]efendants Calvert and Marler /

---

[10] As with the discrimination claim, the same analysis applies to retaliation claims under both Title VII and Section 1981. *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008).

[11] Further, this claim fails because the plaintiff has not explained what "adverse conduct" was taken against her. Even assuming that, somewhere in her stricken facts, there is support for this, or any other aspect of the plaintiff's case, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. . . . Rather, the onus is upon the parties to formulate arguments[.]" *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). To the extent that the adverse conduct complained of is the plaintiff's termination, as noted in this court's discussion of the discrimination claim, the defendants have presented a legitimate non-discriminatory reason for that action, which the plaintiff has not rebutted.

> or failed to take corrective actions to prevent [d]efendants Calvert and
> Marler from engaging in racial discriminatory practices in the workplace
> against the [p]laintiff and / or failed to prevent [d]efendants Calvert
> Marler [sic] from engaging in retaliatory actions against the [p]laintiff.

(Doc. 1 at 9, ¶ 24). As noted above, this claim cites Section 1981 as its basis for relief,

but it sounds like (and the defendants treat it like) an Alabama state law negligent

training and supervision claim. Regardless, the defendants argue that there is no

evidence to support this claim.

Having done so, the non-movant may no longer rest on mere allegations;

instead, it must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358

(1996).  However, the plaintiff does not respond to the argument. "[G]rounds alleged

in the complaint but not relied upon in summary judgment are deemed abandoned."

*Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (internal

citations omitted). Count Three fails.

### F.   Any Section 1983 Claims Must Fail

To the extent that the complaint could be read to include any discrimination

and/or retaliation claims under 42 U.S.C. § 1983, they fail for the same reasons as the

Title VII and Section 1981 claims since they are analyzed under the exact same

framework. *See, Bryant v. Jones*, 575 F.3d 1281, 1296 (11th Cir. 2009)

("[D]iscrimination claims, including hostile work environment claims, brought under

the Equal Protection Clause, 42 U.S.C. § 1981, or Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e–2, are subject to the same standards of proof and employ the same analytical framework."); *Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 (11th Cir. 2001) ("[C]laims under § 1983 and Title VII generally have the same elements of proof and use the same analytical framework.").

Further, in order to prevail on a Section 1983 claim, the plaintiff

must establish that [she was] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law. Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful[.]

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50, 119 S. Ct. 977, 985, 143 L. Ed. 2d 130 (1999). In her response to the motion for summary judgment, the plaintiff provides no evidence that the defendants were state actors. She merely alleges that "[d]efendant Marler and NEA Foods is [sic] a private company with a government service contract." (Doc. 29 at 18). She somehow equates this with being a "government employee"–a completely unsupported assertion.

## IV.  CONCLUSION

Based on the foregoing, the motion for summary judgment is due to be **GRANTED**, and this case **DISMISSED with prejudice**. A final order will be entered.

**DONE** and **ORDERED** this 10th day of February, 2015.

**VIRGINIA EMERSON HOPKINS**
United States District Judge